## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| Kendra Daniels<br>5590 Stevens Dr.<br>Orient, Ohio 43146 | * <br> * | <br>Case No. 2:17-cv-271 |
| Plaintiff, | * | JUDGE |
| v. | * | MAGISTRATE JUDGE |
| Grange Mutual Casualty Company<br>671 South High St.<br>Columbus, Ohio 43206 | * <br> <br> * | **JURY DEMAND ENDORSED HEREON** |
| Defendant. | * | |

## COMPLAINT

Now comes Kendra Daniels ("Plaintiff" or "Ms. Daniels") and proffers this Complaint for damages against Grange Mutual Casualty Company ("Defendant" or "Grange") for its failure to pay her overtime wages seeking all available relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Ohio Minimum Fair Wage Standards Act, O.R.C. 4111.03, 4111.08, 4111.10 and 4111.14(G) ("the Ohio Wage Act"); and the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code § 4113.15 (the Ohio Wage Act and the OPPA will be referred to collectively as "the Ohio Acts"). The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others. Plaintiff Daniels, hereby states as follows:

### I. JURISDICTION AND VENUE

1. This action is brought pursuant to the FLSA, the Ohio Wage Act, OPPA, and 28 U.S.C. §1331.

2. This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. §1367 as this Complaint raises additional claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction because they form a part of the same case or controversy.

3. Venue is proper in this forum pursuant to 28 U.S.C. §1391, because Defendant employed Plaintiff Daniels in the Southern District of Ohio, a substantial part of the events or omission giving rise to the claim occurred in the Southern District of Ohio, and Defendant has done substantial business in the Southern District of Ohio.

## II. THE PARTIES

4. Plaintiff Kendra Daniels, is an individual, United States citizen, and resident of the State of Ohio living in the Southern District of Ohio.

5. At all times relevant, Plaintiff Daniels was employed by Defendant from approximately October 14, 2002 until February 15, 2017. Plaintiff most recently worked as a Salvage Specialist in the Salvage Department for the past five years. As such, Plaintiff was an employee of Defendant Grange as defined in the FLSA, the Ohio Wage Act, and the OPPA.

6. During her employment with Defendant, Plaintiff Daniels was not paid for all of her compensable hours worked because she was misclassified as a salaried exempt employee even though she primarily performed nonexempt duties, including clerical work consisting of processing of paperwork and title work to forward along to the appropriate salvage vendor. Although she worked in excess of forty (40) hours per week and primarily performed nonexempt job duties, Plaintiff was compensated on a salaried basis in the amount of $46,821.69 per year.

7. Defendant Grange Mutual Casualty Company ("Grange") is an Ohio for-profit corporation with its principal place of business in the Southern District of Ohio and the acts that give rise to this Complaint arose in the Southern District of Ohio.

8. Defendant is actively doing business in this judicial district. At all times relevant, Defendant is and has been an "employer" as that term is defined by the FLSA, the Ohio Wage Act, and the OPPA.

9. During relevant times, Defendant maintained control, oversight, and direction over Plaintiff and other similarly situated employees, including the promulgation and enforcement of policies affecting the payment of wages, including overtime compensation.

10. During relevant times, Defendant Grange has mutually benefitted from the work performed by Plaintiff.

11. Upon information and belief, Defendant operates and controls an enterprise and employs employees engaged in commerce or in the production of goods for commerce, or have had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and Defendant has had an annual gross volume of sales made or business done of not less than $500,000 per year (exclusive of excise taxes at the retail level).

12. During relevant times, Defendant Grange has been involved in the employment decisions of Defendant Grange, including, but not limited to, decisions about Defendant's wage and hour policies and practices that affect Plaintiff and all other similarly situated employees.

13. Upon information and belief, Defendant, at all times relevant hereto, was fully aware of the fact that it was legally required to comply with the wage and overtime laws of the United States and of the State of Ohio as well as record keeping laws of the State of Ohio.

### III. FACTS

14. Plaintiff realleges the preceding paragraphs as if fully rewritten herein.

15. Defendant hired Plaintiff Daniels on or about October 14, 2002 until February 15, 2017 when her employment was terminated because of a reduction in force.

16. Plaintiff most recently worked as a Salvage Specialist in the Salvage Department for the past five years. She was compensated on a salary basis of approximately $46,821.69 per year.

17. Plaintiff was typically scheduled to work beginning at 8:00 am and ending at 4:30 pm each day. However, she regularly began work prior to 8:00 am and continued working after 4:30 pm. In addition, she was regularly unable to take a 45-minute uninterrupted meal break.

18. Until approximately October, 2016, Defendant misclassified Plaintiff as a salaried exempt employee rather than properly compensating her on an hourly basis because she primarily performed nonexempt duties.

19. As a Salvage Specialist, Plaintiff primarily performed clerical nonexempt duties. Her position as a Salvage Specialist did not exempt her from being compensated at a rate of one-and-a-half times her regular rate of pay for all hours worked in excess of forty (40) per workweek. Her misclassification resulted in unpaid overtime compensation and other compensation as a result of Defendant's actions herein.

20. In or around October 2016, Plaintiff was called into a meeting with David Downs, Plaintiff's direct supervisor, and John Match, the Assistant Vice President of Claims. At the meeting, Defendant changed Plaintiff's compensation from a salary basis to an hourly basis in the amount of approximately $24.71 per hour.

21. At the meeting, Defendant requested that Plaintiff sign an "Acknowledgement and Receipt" statement indicating that she did not perform any hours beyond 38.75 per week for the previous *two years*. However, Plaintiff refused to sign the statement because she knew it to be untrue since she had regularly worked overtime in the previous few years.

22. Towards the end of October, 2016, Plaintiff met with Jenny Jacobs ("Ms. Jacobs"), the Human Resources Manager, and discussed her concerns with signing the document indicating that she did not work any overtime hours over the past two years because she knew it was untrue.

23. After Plaintiff expressed her concerns, Ms. Jacobs requested that Plaintiff instead estimate the number of hours worked in excess of 38.75 per week (hereinafter "overtime hours") over the past *two years* and subsequently report them to Defendant for payment. Plaintiff indicated to Ms. Jacobs that she had no way of knowing precisely how many hours she worked because she did not keep her own records and Defendant was unwilling to produce any records to assist her. In response, Ms. Jacobs instructed Plaintiff to simply estimate her overtime hours for payment.

24. As such, Plaintiff, conservatively estimated the unpaid overtime hours that she worked over the preceding *two years* without the use of any of Defendants' records, without being informed of her rights under federal or Ohio law, and without any other support from Defendant. The number of overtime hours submitted was inaccurate because Plaintiff felt pressured not to submit any hours. Furthermore, Plaintiff was fearful to report more overtime hours because she feared she may lose her job.

25. Plaintiff knew that the number of hours was still much lower than what she should have reported for a variety of reasons, including she regularly had all of the following occur in addition to being scheduled for at least 38.75 hours each week: (1) she performed off-the-clock nonexempt job duties before the start of her shift ("pre-shift work"); (2) she regularly did not

receive an uninterrupted meal break due to the performance of nonexempt job duties, but she still had meal period deductions in the amount of 45 minutes each day; and (3) she performed of off-the-clock nonexempt job duties after the scheduled end of her shift ("post-shift work").

26. Regarding the pre-shift work, Plaintiff, under the incorrect impression that she was correctly classified as a salaried exempt employee, consistently began performing her job duties at her workstation at approximately 7:30 am each day, which was thirty (30) minutes or so before her workday was scheduled to commence.

27. In addition, Plaintiff regularly did not receive an uninterrupted meal period of forty-five (45) minutes because she performed her job duties. However, Defendant still deducted forty-five (45) minutes for a meal period each day during the last three years of her employment.

28. Furthermore, Plaintiff also regularly continued performing her job duties after the end of regular business hours (4:30 pm).

29. During the last three years of Plaintiff's employment, Defendant knew and/or had reason to know that Plaintiff performed pre-shift work, was unable to have an uninterrupted meal break, and performed post-shift work, resulting in unpaid overtime hours in excess of those which she was required to estimate in October 2016.

30. As such, for all periods prior to October 18, 2016, Plaintiff had been misclassified as an exempt employee even though Plaintiff primarily performed nonexempt job duties as a Salvage Specialist.

31. Nevertheless, on or about October 31, 2016, Defendant promised to pay Plaintiff for approximately 180 hours of unpaid, compensable overtime hours. However, as a condition precedent to payment, Defendant required her to sign a "Acknowledgement and Receipt" statement indicating that the amount of $6,671.30 was intended to "compensate [her] for all hours

that [she] worked beyond 38.75 per week ("overtime hours") during the period from October 17, 2014 through October 17, 2016 for which [she] [has] not been paid."

32. In addition, Defendant inserted language in the Acknowledgment and Receipt, indicating that 180 hours was equal to *or greater than* the number of overtime hours worked by her from October 17, 2014 through October 17, 2016.

33. In essence, Defendant willfully attempted to have Plaintiff waive her rights for the past *two years* for overtime compensation and other compensation under the FLSA and Ohio law. However, the number of hours indicated on the statement did not correctly reflect the total number of hours Plaintiff worked over the past two (2) years.

34. Furthermore, the Acknowledgment and Receipt did not include any liquidated damages or any overtime hours Plaintiff worked in the preceding third year.

35. During three years preceding the filing of Plaintiff Daniel's Complaint, Defendant misclassified Plaintiff because she primarily performed nonexempt duties. The improper misclassification of Plaintiff was knowingly and intentionally made by Defendant.

### IV. CAUSES OF ACTION

#### COUNT I
#### (FLSA –Unpaid Overtime)

36. All of the preceding paragraphs are realleged as if fully rewritten herein.

37. This claim is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

38. The FLSA requires that covered employees be compensated for every hour worked in a workweek. See 29 U.S.C. § 206(b).

39. The FLSA requires that non-exempt employees receive overtime compensation for hours worked in excess of forty (40) per week. *See* 29 U.S.C. § 207(a)(1).

40. Plaintiff was not exempt from receiving FLSA overtime benefits because, *inter alia*, she was not "executive," "administrative," or "professional" employees, as those terms are defined under the FLSA. *See* 29 C.F.R. §§ 541.1, *et seq*.

41. Plaintiff was not exempt from receiving FLSA overtime benefits because, *inter alia*, she was not a "learned professional" employee, as that term is defined under the FLSA. *See* 29 CFR § 541.301.

42. During the three years preceding the filing of this Complaint, Defendant employed Plaintiff.

43. Plaintiff was paid on a salary basis when working in non-exempt positions and primarily performing non-exempt job duties. As such, Defendant misclassified Plaintiff as a salaried exempt employee and did not properly pay her overtime as required by the FLSA.

44. Accordingly, Defendant failed to pay Plaintiff the overtime premium required by the FLSA.

45. Plaintiff routinely worked in excess of forty hours per week during the three years preceding the filing date of this lawsuit.

46. Plaintiff should have been paid the overtime premium for all hours worked in excess of forty hours per workweek.

47. Defendant violated the FLSA with respect to Plaintiff by, *inter alia*, failing to compensate her at time-and-one-half times her regular rates for all hours worked over forty (40) hours in a workweek as a result of Defendant's misclassification, including but not limited to time performing job duties on behalf of Defendant before and after Plaintiff's start and end times; and the reduction of compensable time for meal periods even though the Plaintiff did not receive an uninterrupted meal period.

48. Defendant knew or should have known of the overtime payment requirements of the FLSA. Despite such knowledge, Defendant willfully withheld and failed to pay the overtime compensation to which Plaintiff is entitled.

49. Defendant knowingly and willfully failed to pay Plaintiff the overtime wages she was due. Instead, Defendant attempted to have Plaintiff waive her rights under the FLSA.[1]

50. The exact total amount of compensation, including overtime compensation, that Defendant has failed to pay Plaintiff is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendant or were not kept by Defendant.

51. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continue to suffer damages in an amount not presently ascertainable. Plaintiff seeks unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available as a result of Defendant's willful failure and refusal to pay overtime wages in violation of Sections 6 and 7 of the Act (29 U.S.C. §§ 206-207).

## COUNT II
### (Ohio Revised Code § 4111.03 – Unpaid Overtime)

52. All of the preceding paragraphs are realleged as if fully rewritten herein.

53. This claim is brought under Ohio law.

54. The Ohio Wage Act requires that covered employees be compensated for every hour worked in a workweek. *See* O.R.C. §§ 4111 et seq.; *See also* 29 U.S.C §206(b).

---

[1] However, FLSA rights can only be settled through the supervision of the Secretary of Labor pursuant to § 216(c) or the courts through § 216(b). *Lewis v. Huntington Nat. Bank*, 789 F.Supp.2d 863, 869 (S.D. Ohio 2011). Indeed, employees can still maintain a private cause of action in an FLSA suit because waiver of rights under the FLSA is void as a matter of law. *McConnell v. Applied Performance Technologies, Inc.*, Case No. C2-01-1273, 2002 WL 483540, at *5-6 (S.D. Ohio Mar. 18, 2002), *aff'd*, 98 Fed.Appx. 397 (6th Cir. 2004). *See also Lewis,* 789 F.Supp.2d at 869.

55. The Ohio Wage Act requires that employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in one workweek, "in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the "Fair Labor Standards Act of 1938. *See* O.R. C. § 4111.03 (A), *See also* 29 U.S.C. § 207 (a)(1).

56. Plaintiff was a covered employee entitled to the Ohio Wage Act's protections.

57. Plaintiff was not exempt from receiving Ohio Wage Act overtime benefits because she was not an exempt "executive," "administrative," or "professional" employee, as those terms are defined under the FLSA. *See* O.R.C. 4111.03(A); *see also* 29 C.F.R. §§ 541.0, *et seq*.

58. Plaintiff was not exempt from receiving FLSA overtime benefits because, *inter alia*, she was not a "learned professional" employee, as that term is defined under the FLSA. *See* 29 CFR §541.301.

59. Defendant is a covered employer required to comply with the Ohio Wage Act's mandates.

60. Defendant violated the Ohio Wage Act with respect to Plaintiff by failing to compensate her at the rate of one and one-half times her regular rate of pay for all hours worked in excess of 40 hours in a workweek.

61. In violating the Ohio Wage Act, Defendant acted willfully and with reckless disregard of clearly applicable Ohio Wage Act provisions.

62. For Defendant's violations of the Ohio Wage Act, Plaintiff has suffered damages, Plaintiff seeks unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available.

## COUNT III
### (R.C. § 4113.15 –Violations of the Ohio Prompt Pay Act)

63. All of the preceding paragraphs are realleged as if fully rewritten herein.

64. During relevant times, Named Plaintiff was employed by Defendant.

65. During relevant times, Defendant was an entity covered by the OPPA; and Plaintiff was employed by Defendant within the meaning of the OPPA.

66. The OPPA requires that the Defendant pays Plaintiff all wages, including unpaid overtime, on or before the first day of each month, for wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned by them during the last half of the preceding calendar month. *See* O.R.C. § 4113.15(A).

67. During relevant times, Plaintiff was not paid overtime wages at one and one-half times her regular rate within thirty (30) days of performing the work. *See* O.R.C. §4113.15(B).

68. Plaintiff's unpaid wages remain unpaid for more than thirty (30) days beyond her regularly scheduled payday.

69. Plaintiff has been harmed and continues to be harmed by Defendant's acts or omissions described herein.

70. In violating the OPPA, Defendant acted willfully, without a good faith basis and with reckless disregard of clearly applicable Ohio law, and its actions entitle Plaintiff to liquidated damages in the amount of six percent of the amount of the unpaid overtime compensation owed or two hundred dollars, whichever is greater.

## COUNT IV
### (Ohio Const. Art. II, § 34a and Ohio R.C. § 4111.01, *et seq.* – Failure to Maintain Wage and Hour Records)

71. All of the preceding paragraphs are realleged as if fully rewritten herein.

72. Article II, Section 34a of the Ohio Constitution requires employers to maintain records for each employee showing that employee's name, address, occupation, pay rate, hours worked for each day worked, and each amount paid to an employee for a period of not less than three years following the last date that the employee was employed.

73. The Ohio Wage Act also requires employers to maintain and preserve payroll or other records containing, among other things, the hours worked each workday and the total hours worked each workweek. *See* O.R.C. § 4111.08 and Ohio Rev. Code §4111.14(G).

74. During times material to this Complaint, Defendant was a covered employer and required to comply with the mandates of the Ohio Constitution and the Ohio Wage Act.

75. Plaintiff was a covered employee entitled to the protection of the Ohio Constitution and the Ohio Wage Act.

76. Defendant misclassified Plaintiff.

77. During times material to this Complaint, Defendant blatantly violated the Ohio Constitution and the Ohio Wage Act with respect to Plaintiff by failing to track or properly maintain accurate records of all hours Plaintiff worked each workday and within each workweek. Rather, it suffered or permitted her to work knowing that she was misclassified.

78. In violating the Ohio Constitution and the Ohio Wage Act, Defendant acted willfully and with reckless disregard of clearly applicable provisions.

79. As a result of Defendant's willful violations of Ohio's recordkeeping laws, Plaintiff is entitled to prove her damages by way of just and reasonable inferences.

## V. PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff requests judgment against the Defendant as follows:

A. Finding that Defendant has failed to keep accurate records in accordance with the FLSA and Ohio law;

B. Finding that Plaintiff is entitled to prove her hours worked and damages with reasonable estimates;

C. Awarding Plaintiff unpaid compensation, including overtime wages as to be determined at trial together with any liquidated damages allowed by the FLSA;

D. Awarding Plaintiff unpaid compensation, including overtime wages as to be determined at trial together with any liquidated damages allowed by Ohio Law;

E. Awarding Plaintiff costs and disbursements and reasonable allowances for fees of counsel and experts, and reimbursement of expenses;

F. Awarding Plaintiff reasonable attorneys' fees associated with this action;

G. Issuing an injunction prohibiting Defendant from engaging in present, ongoing and future violations of the FLSA and Ohio Law;

H. Granting Plaintiff leave to amend to file additional claims for relief or different causes of action should information become available through investigation and discovery; and

I. Directing such other and further relief as the Court may deem just or appropriate.

Respectfully Submitted,

/s/ *Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)
**COFFMAN LEGAL, LLC**
1457 S. High St.
Columbus, Ohio 43207
Phone: (614) 949-1181
Fax: (614) 386-9964
Email: mcoffman@mcoffmanlegal.com

*/s/ Daniel I. Bryant*
Daniel I. Bryant (0090859)
**BRYANT LEGAL, LLC**
1457 S. High St.
Columbus, Ohio 43207
Phone: (614) 704-0546
Fax: (614) 573-9826
Email: dbryant@bryantlegalllc.com

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff requests a trial by a jury of eight (8) persons.

/s/ *Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)